UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY SANDERS,

                 **Plaintiff,**        **CASE NO. 07-14206**
                                     **HONORABLE DENISE PAGE HOOD**

**v.**


**DETROIT POLICE DEPARTMENT,** *et al.*,

                 **Defendants.**
_____/

## MEMORANDUM OPINION AND ORDER DISMISSING ACTION

**I.      INTRODUCTION**

       This matter is before the Court on Plaintiff's Notice of Motion for Judgment **[Docket No. 64, filed June 15, 2009]**. On August 4, 2009, Defendants filed their Response **[Docket No. 69]**, and oral arguments were held on August 5, 2009.

       At the motion hearing, Plaintiff raised concerns regarding the filing of several of his exhibits, which he believed were not properly submitted to this Court. Plaintiff believed the Court was unable to issue a proper ruling without the benefit of the aforementioned evidence. It was determined by the Court's review of docket entries, that the disputed exhibits were in fact part of the court record and had previously been reviewed by the Court. The confusion stemmed from the electronic filing system's inability to separately docket exhibits that are filed by hand and scanned into the system. The Court determined that all of the exhibits attached to Plaintiff's Complaint should be considered when making its ruling on Plaintiff's Motion for Judgment. The Court further permitted opposing counsel to file a supplemental brief **[Docket No. 72, filed Aug. 12, 2009]** in response to those

exhibits that were not originally attached to the motion currently pending before this Court.

The Plaintiff's exhibits being considered in this order are the following: (1) Complaint; (2) Detroit Police Department Arrest Report, and Detroit Police Department Investigator's Report & Prosecuting Attorney's Recommendation (3) Personal Protection Order issued by the 3rd Judicial Circuit Court of Wayne County Michigan; (4) Plaintiff's Personal Bond Conditions; (5) Plaintiff's Order of Conviction and Sentence in *People v. Sanders*, No. 06005059-01, from the the 3rd Judicial Circuit Court of Wayne County Michigan before the Honorable Craig S. Strong; (6) transcript of the April 27, 2006 Preliminary Examination before the Hon. Marilyn E. Atkins of the 36th District Court for the City of Detroit; (7) Plaintiff's April 16, 2006 Warrant for a felony in *People v. Sanders*, No. 2006609281 in the 36th District Court; (8) Plaintiff's April 17, 2006 Inmate Personal Property Receipt from the Wayne County Jail System; (9) case inquiry for Plaintiff's medical malpractice case, *Sanders v. Mahmood*, No. 05-523094-NH in Wayne County Circuit Court before Judge John Murphy; (10) October 19, 2006 Letter of Incarceration from the Wayne County Jail indicating that his booking date was April 17, 2006; and (11) a letter of guardianship from the Probate Court of Wayne County in the matter of Eulisha TR Sanders, file No. 2006-703666-GM before Judge Martin T. Maher.

## II.    STATEMENT OF FACTS

The forthcoming facts are drawn from the Plaintiff's Complaint, Plaintiff's exhibits, Plaintiff's filings, Plaintiff's statements made during previous motion hearings and Defendants' response.

Plaintiff Jeffrey Sanders initiated the instant 42 U.S.C. § 1983 suit on October 3, 2007.  The underlying facts of which are the subject of some dispute.  At approximately 8:30 a.m. on  April 15,

2

2006, Defendant Detroit Police Officer Christopher Griffin and his partner were dispatched to Mr. Sander's residence, 7260 Southfield Rd. Apt. 15, Detroit, MI to respond to an assault and battery. According to the Detroit Police Department Arrest Report ("Arrest Report"), partially authored by Officer Griffin, after arriving on the scene he met Tiyani Sanders who was visibly injured and claimed that her husband had struck her with a closed fist and threatened to kill her with a knife. [April 15, 2006 Arrest Report, Compl., Ex. 1].  The Arrest Report further provides that Officer Griffin "made contact with Offender and placed him into custody and then conveyed him to the Northwestern district without incident." [*Id.*].  Consistent with the Arrest Report, Officer Griffin indicates that Mr. Sanders was subsequently transported to the Northwest District Precinct. However, Mr. Sanders avers that he was the subject of a warrantless arrest, and unreasonable seizure.

In the Complaint, Mr. Sanders alleges that he was not afforded a "judicial probable cause hearing" within 48 hours of his arrest, as mandated by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1981).  Mr. Sanders further claims that a timely probable cause hearing was not held, and he was wrongfully detained from the April 15, 2006 date of his arrest until April 27, 2006.

Both parties agree, and the Investigator's Report and Wayne County Prosecutor's Recommendation supports, that the Detroit Police Department referred the matter to the Wayne County Prosecuting Attorney on April 16, 2006. [Investigator's Report & Prosecuting Attorney's Recommendation, Compl., Ex. 2]  As a result, the Wayne County Prosecuting Attorney approved a two-count in custody felony warrant for assault with a dangerous weapon, MICH. COMP. LAWS § 750.82, and domestic violence, MICH. COMP. LAWS § 750.812, which was signed by 36th District Court Magistrate Steven Lockhart on April 16, 2006. [April 16, 2006 Felony Warrant, Pl.'s Mot. for Summ. J., Ex. B]

3

Again both parties agree, and the submitted evidence supports, Mr. Sanders was then transported from the precinct to the 36th District Court, [Detroit Police Department Prisoner Log, Defs.' Resp. to Pl.'s Mot. For. Summ. J., Ex. 4], where he was turned over to the custody of the Wayne County Sheriff's Department.  While at the 36th District Court, Mr. Sanders admits that he was served with an Ex Parte Personal Protection Order ("Protection Order"), which among other things prohibited him from entering the home of, assaulting, stalking or threatening Tiyani Sanders. [April 17, 2006 Protection Order, Compl., Ex. 3].

Critically, the parties dispute whether or not Mr. Sanders was arraigned on April 17, 2006. Mr. Sanders contends that he was not arraigned until May 10, 2006, and never saw a judge or magistrate prior to that point.  However, Defendants assert that he was arraigned on April 17, 2006. In support of their assertion, Defendants attached the Information for Arraignment on Warrant form, which indicates that Mr. Sanders was arraigned before Magistrate Renee R. McDuffee on April 17, 2006. [Arraignment on Warrant, Defs.' Resp. to Pl.'s Mot. for Summ. J., Ex. 5].  Defendants' version is further corroborated by the 36th District Court's docket sheet, which also details the April 17, 2006 Arraignment on the Warrant by Judge McDuffee. [36th District Court Docket, Defs.' Resp. to Pl.'s Mot. for Summ. J., Ex. 7].  In any event, this dispute forms the initial question of material fact, namely, whether Mr. Sanders ever received the initial arraignment.

There is no dispute that on April 27, 2006, twelve days after the assault, Mr. Sanders was transported to the 36th District Court from the Wayne County Jail for a preliminary examination before Chief Judge Marilyn E. Atkins.  Attached to Mr. Sanders' initial motion for summary judgment is the preliminary examination transcript. [April 27, 2006 Preliminary Examination Transcript, Pl.'s Mot. for Summ. J., Ex. A].  At the preliminary examination hearing, the complainant

4

– Mr. Sanders' wife, Tiyani Sanders, testified regarding the events that took place on April 15, 2006. Her testimony was that the dispute began as an argument between Mr. Sanders and his wife regarding money, which eventually escalated into a physical altercation. Mrs. Sanders testified that during the scuffle she received a laceration to her lip, and that Mr. Sanders threatened to kill her with a knife. [*Id.*, p. 6]. At the conclusion of cross-examination, Chief Judge Atkins ruled that "the People has met their burden to show probable cause" and bound Mr. Sanders over for trial after setting the bond at $50,000.00. [*Id.*, p.15-16].

On May 10, 2006, Mr. Sanders submits that he was arraigned in the 3rd Judicial Circuit Court (Wayne County Circuit Court) before Judge Craig S. Strong on charges of (1) felonious assault, and (2) domestic violence arising from the April 15, 2006 incident. Mr. Sanders was subsequently remanded to the custody of the Wayne County Jail, until his trial date of October 11, 2006. Following a trial before a jury, Mr. Sanders was convicted by the jury of domestic violence under MICH. COMP. LAWS § 750.812 on October 11, 2006. The Order of Conviction and Sentence indicates that he was sentenced to one year probation, which was enhanced because he was a 2nd offender. [Order of Conviction and Sentence, Compl., Ex. 5]. The Order of Conviction further indicates that Mr. Sanders was to be given credit for 194 days served in jail, which Mr. Sanders contends is in violation of MICH. COMP. LAWS § 750.81(2).[1] However, as a second offender, the penalty could be

---

[1] Section 750.81(2)-(3) provides that:

(2) Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

(3) An individual who commits an assault or an assault and battery in violation of subsection (2), and who has previously been convicted of assaulting and battering his or

up to one year of incarceration.

On October 3, 2007, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 wherein he alleges that the Detroit Police Department and Officer Griffin violated his Fourth Amendment right to be free from unreasonable search and seizure.  Plaintiff also alleged claims against the trial court judges in his underlying state court action, which were *sua sponte* dismissed by this Court on the grounds of absolute immunity.  The Court also granted Plaintiff's motion to substitute the Detroit Police Department for the City of Detroit as the proper Defendant.  Now before the Court is Plaintiff's second motion for judgment [Docket No. 64, filed June 15, 2009], considered by this Court as a motion for summary judgment, where he again urges the Court that he is entitled to judgment as a matter of law on the basis of all of his aforementioned exhibits, which he claims are not in dispute.

## III.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).  The party moving for summary judgment bears the initial burden and need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987).  Rather, "the burden on the moving party may be discharged by showing . . . to the district court . . . an

_____

her spouse or former spouse, an individual with whom he or she has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, under any of the following, may be punished by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both: ...

6

absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met its burden of production, the nonmoving party must then go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

When ruling on a summary judgment motion, a district court should view the evidence in a light most favorable to the nonmoving party. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*, 503 U.S. 939 (1992). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**B.    *Pro Se* Standards**

When reviewing *pro se* complaints, the court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, "the lenient treatment generally accorded to *pro se* litigants has limits," and *pro se* litigants are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

**IV.    LAW & ANALYSIS**

### A.    Plaintiff's Claims

As a preliminary matter the Court finds it necessary to establish the specific grounds undergirding Plaintiff's claims.  Liberally construing the Complaint and what can be gleaned from Plaintiff's comments before this Court, it appears that Plaintiff is alleging the following claims.  First, Plaintiff appears to allege that his arrest by Defendant Griffin was unconstitutional because it was made without probable cause or a warrant.  Second, Plaintiff argues that the Defendants failed to schedule his arraignment and probable cause examination within appropriate time limits.  Third, Plaintiff seems to claim that the City of Detroit has an unconstitutional policy or custom in regards to its search and seizure policies for alleged domestic violence incidents.  As thoroughly recorded in previous orders of this Court, the Plaintiff is of the understanding that he is entitled to judgment as a matter of law on these claims because, in his view, there are no material questions of fact.  Plaintiff also seems to be of the understanding that the Defendants have somehow "conceded" or admitted the allegations of the Complaint.

### B.    Discussion

For the reasons that follow, the Court DENIES Plaintiff's second motion for summary judgment, and *sua sponte* dismisses those allegations that fail to state a claim for which relief may be granted.[2]  This instant filing, entitled "Notice of Motion for Judgment," is another one of Plaintiff's numerous attempts at prematurely obtaining a judgment without the due process of law.  In this most recent motion, Plaintiff again moves the Court to enter a proposed judgment pursuant

---

[2]  Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), a district court may dismiss a complaint if it is satisfied that the action is frivolous, malicious, if fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  A complaint may be dismissed as frivolous "where it lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

8

to Federal Rule of Civil Procedure 56(c).  Attached to the motion is an "Affidavit of Injury and Damage(s) Inflicted," wherein Plaintiff sets forth the following damages estimations:

(a) Loss of physical liberty from April 15, 2006 - October 30, 2006: $150,000.00 (bond amounts).

(b) Loss of Residency and Personal Estates: $160,000.00.

(c) Loss of Personal and Legal Effects: $3,500,000.00 (based on inability to pursue previously filed medical malpractice claim).

(d) Loss of custody of his biological children from April 15, 2006 to April 9, 2009: $500,000.00.

(e) Punitive damages: $3,750,000.00.

The Court incorporates by reference its previous memoranda and Orders of August 15, 2008, March 24, 2009, and June 25, 2009 in support of the denial of the current motion.  However, in an effort to clarify any misconceptions arising from its Orders, the Court will address each of the Plaintiff's contentions in turn.

     1.    <u>Unreasonable Seizure</u>

The crux of Plaintiff's claim against Defendant Christopher Griffin, and by extension the City of Detroit, appears to rest upon his argument that he was unreasonably seized in violation of the Fourth Amendment.  In support of this assertion Plaintiff cites a series of cases which tend to affirm the general proposition that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573 (1980)[3]; *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) ("Although certain

---

[3] As to the *Payton* holding, this Court notes that it expressly provided that "we have no occasion to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." *Payton*, 445 U.S. at 583.

9

seizures may be justified on something less than probable cause...we have never 'sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes ... absent probable cause or judicial authorization.").

Undoubtedly, the principles espoused by these cases are the law of the land, however, Plaintiff is not entitled to summary judgment on these grounds.  As a general rule, "[a] warrantless seizure is presumptively unreasonable," however, "[t]he Supreme Court has identified three types of reasonable, and thus permissible warrantless encounters between the police and citizens: (1) consensual encounters in which the contact is initiated by a police officer without articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary or involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *U.S. v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009).  Plaintiff's arguments demonstrate that he believes that none of these exceptions apply, and that his arrest was "per se" unreasonable and in violation of the Fourth Amendment.

The Court finds that Plaintiff is not entitled to summary judgment on this claim as Defendant Griffin contends that there may be sufficient facts to support probable cause for Plaintiff's arrest. As noted above, the arresting officers spoke with  Tiyani Sanders who indicated that her husband attempted to kill her, and had visible injuries which they observed. From this a reasonable juror could conclude that Defendant Griffin had probable cause to initiate a warrantless arrest, and therefore a material question of fact exists as to the probable cause element.  Accordingly, Plaintiff's motion for summary judgment is denied as to this claim.

2.      Untimely Probable Cause determination

10

Plaintiff next claims that he was not afforded a judicial probable cause hearing within 48 hours of his arrest, as mandated by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1981). In *Cherrington v. Skeeter*, 344 F.3d 631, 643 (6th Cir. 2003), a case on which the Plaintiff relies, the Sixth Circuit Court of Appeals explained the basis of this claim:

> the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extend restraint of liberty following arrest. In *County of Riverside*, the Court considered just how soon such a determination must be made, and concluded that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness of *Gerstein*." *County of Riverside*, 500 U.S. at 56, 111 S. Ct. at 1670. While a delay of over 48 hours is not *per se* unlawful, the Government bears the burden in such cases to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" that led to the delayed probable cause determination. *County of Riverside*, 500 U.S. at 57, 111 S. Ct. At 1670.

*Cherrington*, 344 F.3d at 643; *see also United States v. Fullerton*, 187 F.3d 587, 590 (6th Cir. 1999) ("We cannot overstate the importance of the constitutional requirement that there be a prompt determination of probable cause when a person is arrested without a warrant."). Consistent with this mandate, Michigan law requires that an "accused shall be entitled to a prompt examination and determination by the examining magistrate in all criminal causes," and it is the duty of all courts and public officers to make "a final determination without delay." MICH. COMP. LAWS § 766.1. "Although a preliminary examination may assist in fulfilling the constitutional requirement that the accused be informed of the nature of the charge ... the primary function of a preliminary examination 'is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it.'" *People v. McGee*, 258 Mich. App. 683, 696, 672 N.W.2d 191 (Mich. Ct. App. 2003). Because MICH. COMP. LAWS § 766.4 requires that the preliminary examination occur within 14 days of the arraignment, it is generally construed to require an arraignment take place within 48 hours of arrest. *See People v. Holly*, No. 214795, 2001 Mich. App. LEXIS 669, * 5 (Mich.

Ct. App. Feb. 9, 2001). This "constitutes a judicial determination of probable cause." *Holly*, 2001 Mich. App. LEXIS 669, *13 (citing *People v. Whitehead*, 238 Mich. App. 1, 2; 604 N.W.2d 737 (1999)).

The Court first notes that *County of Riverside, supra*, is distinguishable from the present matter and Plaintiff's reliance on it is misplaced. The plaintiffs in *County of Riverside*, and the later certified class members, had been arrested without a warrant, had not received probable cause determinations within 48-hours of arrest and were still in custody at the time the action for injunctive relief was commenced in the U.S. District Court for the Central District of California. *Id*. at 48-49. This is unlike the present matter, as Mr. Sanders had already been convicted, and sentenced to a term of probation at the time he filed the instant Complaint. Therefore, the Court may conclude that Mr. Sanders lacks standing to assert this claim before this Court. The *County of Riverside* court specifically noted that many of the plaintiffs' claims had since been rendered moot as they "either received probable cause determinations or were released." *Id.* at 51. The Supreme Court nevertheless rejected the County's argument that the plaintiffs lacked standing because "by obtaining class certification, plaintiffs preserved the merits of the controversy" because "the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Id.* As such, the facts present in *County of Riverside* are dissimilar to the facts of Mr. Sanders' case, and he lacks standing to bring this claim.

Setting aside the lack of standing issue, the Court further notes that *County of Riverside* did not fashion a rigid 48-hour probable cause determination requirement. Relying on its holding in *Gerstein*, the Supreme Court held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness

12

requirement of *Gerstein*." *Id.* at 56. However, the court went on to explain that a violation of the 48-hour rule did not necessarily violate the Fourth Amendment, but merely shifted the burden "to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

As recognized in previous orders of this Court, and made clear here, Plaintiff is not entitled to judgment as a matter of law because a material question of fact exists as to whether Plaintiff appeared at an arraignment before Magistrate Renee McDuffee on April 17, 2006. According to Plaintiff, he did not appear at an arraignment until May 10, 2006, well-beyond 48 hours of his arrest. However, Defendants assert that he was arraigned on April 17, 2006, 2 days after his arrest, and that he had his preliminary examination 10 days after his arraignment, on April 27, 2006. The Court cannot be more clear in finding that a material question of fact exists with regard to Plaintiff's claim arising out of his alleged detention without a probable cause/arraignment hearing within 48 hours. It is not conceded by Defendants that Plaintiff had no hearing. Plaintiff claims he was not brought before a judge in compliance with the 48-hour rule, as such there is a dispute over whether he suffered a violation of the 48-hour rule. In any event, should the evidence establish that Mr. Sanders was not provided a probable cause determination within 48 hours of his arrest, such evidence would not necessarily constitute a violation of the Fourth Amendment. It would merely shift the burden to the government to demonstrate an emergency or other extraordinary circumstance which prevented a prompt probable cause determination. Accordingly, on this claim, Plaintiff's motion for summary judgment must be denied.

3.    Implications of *Heck v. Humphrey* on Plaintiff's Fourth Amendment Claims

Plaintiff's Fourth Amendment claims of unreasonable seizure and untimely probable cause

13

determination are subject to dismissal because of the rule announced in *Heck v. Humphrey* 512 U.S. 477 (1994), despite this Court's conclusion that material questions of fact exist on these claims. To the extent that Plaintiff seeks monetary damages for violations of his constitutional right to be free from illegal search, arrest and conviction, he would be unable to obtain such damages absent a showing that his criminal conviction has been overturned. To recover monetary damages for an allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a federal writ of habeas corpus. *Heck*, 512 U.S. at 486-87. A § 1983 suit in which a plaintiff seeks damages in connection with proceedings leading to his state court conviction is not cognizable where the plaintiff's conviction has never been reversed or otherwise invalidated. *See Patrick v. Laskaris*, 25 F. Supp. 2d 432, 433 (S.D.N.Y. 1998). Because Plaintiff did not allege that his conviction has been overturned, expunged, or called into question by the issuance of the writ of habeas corpus, the allegations relating to his criminal prosecution and conviction against Defendants fails to state a claim for which relief may be granted and must, therefore, be dismissed. *See Adams v. Morris*, 90 Fed. Appx. 856, 858 (6th Cir. 2004); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 756 (E.D. Mich. 2001). In other words, if the Plaintiff were to prevail on his § 1983 claims for warrantless arrest without probable cause, and for the alleged untimely probable cause determination, this would necessarily cast doubt on his underlying state criminal conviction for domestic violence.

As such, the doctrine of *Heck v. Humphrey* precludes this Court from granting the requested relief absent the invalidation (by reversal, expungement, or issuance of the writ of habeas corpus) of the underlying criminal conviction. The forum to argue the unreasonable seizure and untimely

14

probable cause determination was the state courts, and unless that conviction is overturned by the state court (or the federal court on habeas corpus review under 28 U.S.C. § 2254) this Court is powerless to provide the requested relief.

4.     Unconstitutional Policy or Practice

Liberally construing the Complaint and additional filings, Plaintiff appears to allege that the City of Detroit has an unconstitutional custom or policy.  Presumably, Plaintiff's claim rests upon the events giving rise to his arrest and subsequent imprisonment.  Plaintiff has failed to allege facts sufficient to establish this claim.

"A municipality may not be held vicariously liable under § 1983, for the acts of its employees or agents." *Cherrington*, 344 F.3d at 645.  However, "[a] municipality may be held liable 'only when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury." *Bennet v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005)(internal citation omitted).  "Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 791 (1985)).  "The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue." *Bennet v. City of Eastpointe*, 410 F.3d at 819.

As the record currently stands, Plaintiff is unable to establish, nor has adequately alleged the existence of an unconstitutional policy or custom.  A liberal construction of the Plaintiff's initial motion for summary judgment tends to suggest that the custom he is attempting to allege rests upon the alleged violation of the "48-hour" rule.  In view of this alone, Plaintiff has failed to meet his

15

burden to establish liability under § 1983.  *See Anthony v. Roberson*, 26 Fed. Appx 419, 422 (6th Cir. 2001) ("[Plaintiff's] only allegations supporting his claim that a government policy caused his arrest and conviction are his vague and conclusory conspiracy claims that unnamed officials in the government of the City of Detroit ordered his arrest without probable cause.  These conclusory allegations are insufficient to state an arguable claim that an unconstitutional governmental policy caused [Plaintiff's] illegal arrest.").  In this same vein, when asked during his deposition to identify the challenged custom or policy, Plaintiff conceded that beyond the warrantless entry into his home, he did not know what the custom or policy was. [Deposition of Jeffrey Sanders, Def.'s Resp. to Pl.'s Mot. for Summ. J., Ex. 9].  As such, Plaintiff's motion for summary judgment in this regard is DENIED, and his claim resting upon an unconstitutional policy or custom against the City of Detroit is *sua sponte* DISMISSED.

## V.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment [**Docket No. 64, filed June 15, 2009**] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 28, 2009

I hereby certify that a copy of the foregoing document was served upon Jeffrey Sanders, 16599 Hubbell, Detroit, MI 48235 counsel of record on August 28, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager