**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FILED

FEB 1 0 2017

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

JEFFREY SANDERS,

        Plaintiff,

v.

        Case No. 07-14206
        Hon. Denise Page Hood

DETROIT POLICE DEPARTMENT and
CHRISTOPHER GRIFFIN,

        Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I.    INTRODUCTION

On October 3, 2007, Plaintiff Jeffrey Sanders ("Sanders") filed this action against the Detroit Police Department ("DPD"), DPD Officer Christopher Griffin ("Griffin"), and two state judges. (Doc # 1) The Court dismissed the judges as parties and granted Sanders' motion to add the City of Detroit as a party in place of DPD. The Complaint alleges an unreasonable search and seizure claim, a claim that Sanders was not provided with a timely judicial determination of probable cause, and a *Monell* claim. Summary judgment was granted in favor of Defendants. (Doc # 74) The Sixth Circuit reversed and remanded for further proceedings on the Fourth Amendment claim only, instructing the Court to examine whether Officer Griffin's warrantless entry into Sanders' apartment was

1

constitutional pursuant to the domestic violence exception identified in *Georgia v. Randolph*, 547 U.S. 103, 118 (2006). (Doc # 100) The Sixth Circuit specifically asked whether "Tiyani [Sanders] validly consented to the entry, Griffin asked for such consent, or Sanders ever objected." *Id.* at 504. This Court held a bench trial on April 25 and 26, 2016. The Court heard testimony from Sanders and DPD Officers Griffin and Jason Treece ("Treece").

## II.    FINDINGS OF FACT

On April 15, 2006 at approximately 8:30 a.m., Officers Griffin and Treece responded to a 911 dispatch at 7260 Southfield Road in Detroit after a report of an assault and battery. The Officers were met outside by Jeffrey Sanders' wife, Tiyani Sanders. Officer Treece testified that Tiyani Sanders appeared frightened and distressed; she had a laceration on her lip. Tiyani Sanders stated to the officers that, following a verbal altercation, Jeffery Sanders hit her in the face with a closed fist and busted her lip. He also threatened her with a knife and stated that he would kill her. Tiyani Sanders told Officer Treece that Jeffrey Sanders was acting strange, as if he were on drugs. Officer Griffin testified that he told Tiyani Sanders that the officers were going to effectuate an arrest and asked where Jeffrey Sanders was located. Tiyani Sanders told the officers that Jeffrey Sanders was in the apartment. The officers asked if they could go into the apartment, and Tiyani

Sanders stated yes. Officers Griffin requested backup, and the officers proceeded up to the apartment.

After arriving at the apartment, the officers knocked on the door. Jeffrey Sanders testified that he heard the knock and opened the door. He saw police officers. The officers told him that he was the subject of a domestic violence investigation and asked if he would discuss it. Sanders testified that he stated, "yes, let me get something on my ass," referring to the fact that he was in his underwear. Sanders took a step back into the apartment, and the officers stepped into the apartment through the open door and arrested Sanders. Defense Counsel specifically asked Sanders whether Sanders stated, "No, you cannot come in" to the officers. Sanders stated he did not. Sanders stated that after stating, "yes, let me get something on my ass," the officers entered his home and arrested him.

In his Section 1983 claim, Sanders contends that the officers violated his Fourth Amendment rights by entering his home without a warrant.

## III.   APPLICABLE LAW

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

3

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. Amend. IV. Warrantless searches are *per se* unreasonable absent a valid exception, such as the exigent circumstance exception. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Payton v. New York*, 445 U.S. 573, 590 (1980). Exigent circumstances exist when there is a "need to protect or preserve life or avoid serious injury." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). Exigent circumstances also exist if immediate and serious consequences will certainly occur if police officers postpone their actions in order to obtain a warrant. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). The Sixth Circuit has identified situations presenting a "risk of danger to the police or others" as one category of exigent circumstances justifying warrantless entries. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). The relevant inquiry is whether an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)). When engaging in this inquiry, courts should examine the totality of the circumstances to determine whether the warrantless entry was justified. *Thacker v. City of Columbus*, 328 F.3d 244, 254 (6th Cir. 2003).

4

The Sixth Circuit has evaluated warrantless entries in response to domestic violence incidents under the exigent circumstances exception. *Id.* And, the Supreme Court has examined warrantless entries into dwellings regarding domestic violence incidents. As it relates to co-tenants, the general rule is that one tenant's consent to law enforcement's warrantless entry does not override a physically present co-tenant's express refusal of entry to law enforcement unless law enforcement is entering a dwelling to protect a resident from domestic violence. *Randolph*, 547 U.S. at 118 (2006). Police may enter a dwelling to protect a resident from violence if police have "good reason to believe such a threat exists." *Id.* at 118. Officers may also enter a dwelling to "determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur." *Id.*

## IV.   DISCUSSION

### A.   Did Officer Griffin Ask for Consent to Enter?

Officer Griffin received permission from Tiyani Sanders to enter the apartment. Officer Griffin testified that he received permission from Tiyani Sanders to enter the apartment. He explicitly asked for permission to enter the apartment that Tiyani Sanders shared with Jeffrey Sanders. Officer Griffin stated that he told Tiyani Sanders that he was going to effectuate an arrest and asked her whether the officers could go inside her apartment. Officer Griffin's question was an explicit request for permission to enter the apartment.

5

**B.     Did Tiyani Sanders Give Consent to Enter?**

Tiyani Sanders gave consent to enter the apartment.  Officer Griffin testified that he told Tiyani Sanders that he was going to effectuate an arrest and asked her whether the officers could go into the apartment to do so.  Tiyani Sanders stated yes.  By doing so, Tiyani Sanders consented to law enforcement's entry into her apartment.

**C.     Did Jeffrey Sanders Consent to or Object to the Police Entering His Home?**

Jeffrey Sanders did not object to the officers' request to enter his apartment. After Sanders answered the door, the police informed him that he was the subject of a domestic violence investigation.  The police asked Sanders whether he wanted to talk about it.  Sanders testified that he said, "yes, let me get something on my ass," because he needed to put on clothing given that he was in his underwear.

Sanders' statement that he wanted to discuss the domestic violence incident does not mean that he consented to the officers entering his home.  While Sanders did not explicitly state that the officers could not enter his home, he did not explicitly state yes.  The officers interpreted Sanders' statement and action of stepping further inside his apartment, presumably to get dressed, as giving implied consent.

Physical actions may communicate consent.  "Consent to a search may be nonverbal so long it is not the product of 'duress, coercion, or trickery.'" *United*

6

*States v. Ortiz*, 455 F. App'x 669, 671 (6th Cir. 2012) (citing *United States v. Buchanan*, 904 F.2d 349, 355 (6th Cir.1990)).  Police officers can receive non-verbal, physical consent to enter a home.  *Id.* at 672 (finding that police officers validly obtained consent to enter when they asked for permission to step into the apartment, and the defendant responded by stepping back, gesturing, and opening the door wider); *see also, United States v. Carter*, 378 F.3d 584, 588 (6th Cir. 2004) ("[Defendant's] actions as described constituted valid consent.  The investigating officers were instantly recognizable as policemen when [the defendant] opened the door.  They properly asked permission to enter, and [the defendant] stepped back, letting them in.  Any ordinary [visitor], under like circumstances, would understand assent to have been given, and the police are not held to a higher standard in this regard than an ordinary person.").

However, the non-verbal consent must be unequivocal.  The act of simply stepping back does not in itself mean that an officer has consent to enter a home. *See United States v. Hardeman*, 36 F. Supp. 2d 770, 779 (E.D. Mich. 1999) (finding that the defendant did not consent to entry of officers where he made no statement indicating consent, but rather turned his back on the officers and walked into the interior of the home).  "Although in limited circumstances consent may be inferred from the cooperative conduct of a defendant, courts are justifiably hesitant to sanction entry to the home based on inferred consent." *Id.*

7

In this case, Sanders did not unequivocally give consent. Although he opened the door and stated he wanted to speak about the domestic incident, there is no evidence that Sanders gestured to the officers that they could come in. The fact that Sanders was in his underwear and implied that he wanted to get dressed before speaking with the officers suggests he was only expressing his desire to discuss the incident, not giving consent for the officers to enter the apartment. Even though Sanders did not explicitly tell the officers that they could not enter his home, he did not unequivocally state that they could enter. Sanders' conduct is too ambiguous to determine that he gave consent.

The Court finds that Sanders (1) did not *object* to the officers entering his home, but (2) did not give *consent* for the officers to enter his home.

### D.       Was the officers' entry into the apartment constitutional?

The Court finds that Tiyani Sanders had apparent authority to consent to, and did in fact consent to, the officers' entry into the apartment that she shared with Jeffrey Sanders. Jeffrey Sanders was a physically present co-occupant who could have *but did not expressly refuse* to consent to the officers' entry into the apartment, as required under *Randolph* in order to override the consent provided by the other co-occupant, in this case Tiyani Sanders. *See Randolph*, 547 U.S. at 106. Unlike the objecting co-occupant in *Randolph* who unequivocally and expressly refused consent, *see id.* at 107, Jeffrey Sanders opened the door for the officers and

8

expressed willingness to speak to them about the domestic violence incident. He then stepped further into the apartment, leaving the door open. The Court concludes that the officers had Tiyani Sanders' consent to enter the apartment, and Jeffrey Sanders did not invalidate that consent.

Alternatively, this Court reaches the same conclusion considering the exigent circumstances and the domestic violence discussion in *Randolph*, where the court stated that officers may enter a home "to determine whether violence (or threat of violence) *has just occurred* or is about to (or soon will) occur, however much a spouse or other co-tenant object[s]." *Id.* at 118 (emphasis added) (citing 4 W. LaFave, Search and Seizure § 8.3(d) (3d ed.1996) ("[E]ven when ... two persons quite clearly have equal rights in the place, as where two individuals are sharing an apartment on an equal basis, there may nonetheless sometimes exist a basis for giving greater recognition to the interests of one over the other.... [W]here the defendant has victimized the third-party ... the emergency nature of the situation is such that the third-party consent should validate a warrantless search despite defendant's objections") (internal quotation marks omitted; third omission in original)). A warrantless entry into a home may be justified by "the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside *or outside* the dwelling." *Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (internal quotations omitted) (emphasis added).

9

Officer Treece testified that when he and Officer Griffin encountered Tiyani Sanders outside of the apartment, she was visibly frightened and had a visible injury, indicating a violent assault.  She also told the officers that Jeffrey Sanders had wielded a knife and threatened to kill her, and claimed that he appeared to be under the influence of drugs.  Officer Griffin asked Tiyani Sanders whether the officers could enter the apartment, and she stated yes.  The officers then knocked on the door of the apartment, and Jeffrey Sanders opened the door only partially dressed.  The officers made clear they were investigating the domestic violence incident, and Sanders said he was willing to discuss it.  He stepped back into the apartment presumably to put pants on and left the door open.

The Court notes the domestic violence and emergency nature of the situation.  Tiyani Sanders had been forced to flee her home after being violently assaulted by her husband and made an emergency 911 call.  The Court further notes the uncertainty of the situation.  Tiyani Sanders had just reported being threatened with a knife (a dangerous and potentially deadly weapon that remained inside the house) coupled with a report that Jeffrey Sanders appeared to be under the influence of drugs.  Under the totality of the circumstances, the Court finds that the officers were justified in making a warrantless entry through the door, which Sanders had left open, in order to determine whether violence had just occurred and to speak to the alleged perpetrator.  *See Vangel v. Szopko*, No. 15-2465, 2016

WL 6994227, at *3 (6th Cir. Nov. 30, 2016) (finding that the officers were objectively reasonable and entitled to qualified immunity where they "responded to a 911 call about a domestic dispute and found a victim that appeared to have been attacked. Domestic dispute calls are dangerous, in part, because emotions run high. And the [o]fficers had reports of violent behavior that raised red flags about [the plaintiff]'s current mental and emotional state."); *see also, Lawrence v. Bloomfield Twp.*, 313 F. App'x 743, 747 (6th Cir. 2008).

## V.   CONCLUSION

Pursuant to *Georgia v. Randolph*, the officers received permission from Tiyani Sanders to enter the apartment. The officers did not violate Jeffrey Sanders' Fourth Amendment Rights. The Court finds against Plaintiff Sanders and in favor of Defendants, and concludes that Plaintiff Sanders has no cause of action.

## VI.   ORDER

For the reasons set forth above, and the Court having found no cause of action,

IT IS ORDERED that this action is DISMISSED with prejudice.

Honorable Denise Page Hood
United States District, Chief Judge

Dated:       FEB 1 0 2017

11

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION



FEB 10 2017

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

JEFFREY SANDERS,

                Plaintiff,             CASE NO. 07-14206
                                        HON. DENISE PAGE HOOD

v.

DETROIT POLICE DEPARTMENT,
CHRISTOPHER GRIFFIN,

                Defendants.
_____/

## JUDGMENT

The Court having entered an Order on this date finding in favor of

Defendants and against Plaintiff Sanders,

Judgment is entered in favor of Defendants and against Plaintiff.

DAVID J. WEAVER
CLERK OF THE COURT

BY: _____

APPROVED:

_____
DENISE PAGE HOOD
CHIEF UNITED STATES DISTRICT JUDGE

DATED: **FEB 10 2017**
Detroit, Michigan